FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8.14-CR-203-T-17TBM

GAETON DELLA PENNA
   a/k/a "Guy Della Penna"

18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C) (Forfeiture)
18 U.S.C. § 982(a)(1) (Forfeiture)
28 U.S.C. § 2461(c) (Forfeiture)

## INDICTMENT

The Grand Jury charges:

## COUNTS ONE THROUGH EIGHT
### Wire Fraud
### (18 U.S.C. § 1343)

### A.  Introduction

At times material to this Indictment:

1.    Defendant Gaeton Della Penna a/k/a Guy Della Penna [Penna] was a resident of Sarasota in the Middle District of Florida. Penna was previously registered through FINRA as a broker until 2002.

2.    Gaeton Capital Advisors, LLC [hereinafter GCA] was a Florida company controlled by Defendant Penna operating out of Sarasota County, Florida.

3.    The Contrarian Fund, LLC [hereinafter CF] was a Florida company controlled by Defendant Penna operating out of Sarasota County, Florida.   CF

was established as "investment fund" by Penna and was used to solicit and obtain funds from investors.

4.      The New Economy Fund, LLC, [hereinafter NEF] was a Florida company controlled by Defendant Penna operating out of Sarasota County, Florida.   NEF was established as "investment fund" by Penna and was used to solicit and obtain funds from investors.

5.      A-G Hedge Group [hereinafter A-G] was a Florida company controlled by Defendant Penna operating out of Sarasota County, Florida.   A-G was established as "investment fund" by Penna and was used to obtain funds from investors.

6.      The Florida Department of Financial Regulation [hereinafter DFR] was created to protect the citizens of Florida, promote a safe and sound financial marketplace, and contribute to the growth of Florida's economy with effective regulation of the financial services industry. Any person who for compensation refers, solicits, offers, or negotiates for the purchase or sale of investment advisory services is required to be registered in Florida, regardless of their professional designation.   Penna is not registered with DFR.

7.      A "Ponzi" scheme is a fraudulent investment program in which funds paid in by later investors are used to repay principle and pay out nonexistent "profits" to the original investors, thus creating the illusion that the fraudulent investment program is a successful enterprise which, in turn, attracts new investment funds that are used to sustain the fraudulent investment program.

8.      The defendant, Gaeton Della Penna, operated a Ponzi scheme by which he solicited friends and others [hereafter "investors"] to invest in "investment funds" created by Defendant Penna -- A-G Hedge Group, The Contrarian Fund or the New Economy Fund [collectively referred to as the Funds].   As part of this scheme, the defendant registered companies in those names with the state of Florida, opened bank accounts opened under those names, and the name of Gaeton Capital Advisors.   Defendant directed investors to write checks and wire their investment proceeds to him in the name of Funds and to GCA.   Defendant also established separate trading accounts in the names of the Funds.

9.      To entice investors, the defendant guaranteed investors at least 5% yearly interest, with the principal to be secure and returned at the end of 18 months, minus management and/or organizational fees paid to Penna.   The defendant's promises of guaranteed returns and principal were knowingly and intentionally false, and yet he repeated these false promises to investors over the term of the scheme.   Instead of making profitable trades and protecting investors' principal, the defendant in fact, used less than half of the investor money for trading, lost money in his trades and misappropriated and converted investors' money by using it to repay other investor's principal and for personal expenditures, including mortgage payments on Penna's waterfront residence.

## B. The Scheme to Defraud

10.    Beginning in or about November 2008, and continuing through in or about October 2013, in Sarasota County, in the Middle District of Florida, and elsewhere, the defendant,

GAETON DELLA PENNA
a/k/a "Guy Della Penna",

knowingly, willfully, and with intent to defraud, did devise, and intend to devise, a scheme and artifice to defraud investors, and for obtaining money and property from investors by means of false and fraudulent pretenses, representations, and promises that related to material facts, the substance of which scheme and artifice is described below.

## C.   Manner and Means

11.    The substance of the scheme and artifice and the manner and means used to accomplish its ends, included, among other things, the following:

a.   It was part of the scheme and artifice that the defendant would and did entice potential investors to participate and invest in his Funds by falsely claiming that he had a successful strategy for investment;

b.   It was further a part of the scheme and artifice that the defendant would and did falsely promise and guarantee investors a yearly interest of at least 5% and promise that he would pay back their investment, plus growth, after 18 months, minus a nominal management and/or organizational fee to be paid to defendant.

4

c.  It was further a part of the scheme and artifice that once the funds were placed with defendant for investment, defendant would and did periodically send investors statements and letters, or cause such statements and letters to be sent, wherein defendant falsely represented what was supposed to be the balance in each investor's account and that their investments were performing successfully.

d.  It was further a part of the scheme and artifice that by sending these false statements, the defendant would and did lull investors into believing their investment was safe and would and did cause investors, and their family members, to invest even more heavily into the funds, by liquidating other accounts and assets in order to invest their money with defendant with the promise of interest returns and the return of principal.

e.  It was further a part of the scheme and artifice that defendant would and did send or cause to be sent to investors quarterly "interest" checks, paid out of other investor funds, to lead investors to believe that their investment was safe and the Funds met their stated promise of interest returns when they did not.

f.  It was further part of the scheme and artifice that the defendant would and did place and cause to be placed and transfer and cause to be transferred investor funds into domestic bank

5

accounts in the name of the Funds controlled by defendant to use
to pay other victim investors and to enrich himself and others,
rather than using the funds to trade stock, as promised.

g.  It was further a part of the scheme and artifice that the defendant
would and did use trading accounts in the name of the Funds to
transfer money in order to make it appear that he placed all
money there when instead defendant only traded a portion of the
investor money invested in the Funds.

h.  It was further part of the scheme and artifice that when victim
investors would request disbursements of the supposed interest,
principal and returns accruing to their accounts, the defendant
would and did pay and cause investors to be paid with other
investors' money, thereby creating the illusion that the fraudulent
investment program was a solvent and profitable enterprise
earning actual returns.

i.  It was further part of the scheme and artifice that the defendant
would and did conduct these activities in a manner calculated to
conceal and cover up the fraudulent nature of this scheme and
artifice, and to mislead and deceive the victim investors and
others.

6

## D. Wire Communications in Execution of Scheme

12. On or about the dates set forth below in each count, in the Middle District of Florida, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, the defendant,

GAETON DELLA PENNA
a/k/a "Guy Della Penna",

did knowingly transmit and caused to be transmitted by means of wire communication in interstate commerce the following:

| COUNT | DATE | NATURE OF INTERSTATE WIRE |
|---|---|---|
| One | 8/31/11 | Defendant knowingly caused a wire transfer of $110,000 of investor funds from CF BOA account (through New York) to the GCA Regions Bank account ending in 1221 in Florida |
| Two | 8/31/11 | Defendant knowingly caused a wire transfer of $110,000 from GCA Regions Bank account ending in 1221 in Florida to the Morgan Stanley account in the name of "L.P." in New York |
| Three | 3/5/12 | Defendant knowingly caused victim investor "A.H." to wire $300,000 from his Entrust Tampa (Advanta Trust) account in the name of "A.H., IRA" in Florida to the CF BOA account ending in 9777 in Florida (through New York) |
| Four | 11/2/12 | Defendant knowingly caused victim investor "L.P." to wire $100,000 from his Morgan Stanley account in the name of "A.L.P., Trustee" in New York to the GCA Regions Bank account ending in 1221 in Florida |
| Five | 11/2/12 | Defendant knowingly caused a wire transfer of $100,000 of investor funds from the GCA Regions Bank account ending in 1221 in Florida to the Wells Fargo Bank account of V.L. in Connecticut for the return of principal for a previous investment by V.L. |
| Six | 4/2/13 | Defendant knowingly caused a wire transfer of $50,000 of investor funds from the GCA Synovus Bank account ending in 4492 in Florida to the Morgan Stanley account in the name of L.P. in New York as the return of principal for a previous investment by L.P. |

| COUNT | DATE | NATURE OF INTERSTATE WIRE |
|-------|------|---------------------------|
| Seven | 5/6/13 | Defendant knowingly caused a wire transfer of $75,000 of investor funds from the NEF BOA account ending in 1375 to the GCA Synovus Bank account ending in 4492 (through Georgia) to use to return $50,000 previously invested by L.P. and for personal expenditures |
| Eight | 7/23/13 | Defendant knowingly caused a wire transfer of $290,000 of investor funds from the GCA Synovus Bank account ending in 4492 (through Georgia) to the CF BOA account (through New York) to use to return of principal in the amount of $289,531 to repay a previous investor L.P. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS NINE THROUGH EIGHTEEN
### MAIL FRAUD
### (18. U.S.C. § 1341)

### A. Introduction

1.      The substance of the scheme and artifice is described in paragraphs 1 through 9 of Counts One through Eight of this indictment, and those paragraphs are reffealleged and incorporated by reference as if fully set forth herein.

### B.   Scheme and Artifice

2.      Beginning in or about September 2010, and continuing through in or about October 2013, in Sarasota County, in the Middle District of Florida, and elsewhere, the defendant,

GAETON DELLA PENNA
a/k/a "Guy Della Penna",

knowingly, willfully, and with intent to defraud, did devise, and intend to devise, a scheme and artifice to defraud investors, and for obtaining money and property from investors by means of false and fraudulent pretenses, representations, and

8

promises that related to material facts, the substance of which scheme and artifice is described below.

### C.  Manner and Means

3.      The allegations in paragraphs 11(a) through 11(i) in Counts One through Eight above are realleged and incorporated by reference as if fully set forth herein.

### D.  Mailings in Execution of Scheme

4.      On or about the dates set forth below in each count, in the Middle District of Florida, and elsewhere, for the purpose of executing the aforesaid scheme and artifice and attempting to do so, the defendant,

GAETON DELLA PENNA
a/k/a "Guy Della Penna (Penna)",

knowingly deposited and placed and caused to be deposited and placed in an authorized mail depository to be sent and delivered by the Postal Service, the listed items identified below:

| Count | Date | Nature of Mailing |
|---|---|---|
| Nine | 7/1/11 | Defendant knowingly deposited and caused to be deposited for delivery by the Postal Service a check in the amount of $1250 to investor V.L. for "second quarter interest 2011" |
| Ten | 2/1/12 | Defendant knowingly deposited and caused to be deposited for delivery by the Postal Service a letter to victim V.L. stating that the "implied accrued value" of her investment was $105,312.50 as of December 31, 2011, when it was not. |
| Eleven | 3/29/12 | Defendant knowingly deposited and caused to be deposited for delivery by the Postal Service a check to R.G. in the amount of $50,000 for the mortgage payment on defendant's Sarasota residence from investor funds |

| Count | Date | Nature of Mailing |
|-------|------|-------------------|
| Twelve | 10/17/12 | Defendant knowingly deposited and caused to be deposited for delivery by the Postal Service a letter to victim L.P. stating that the "implied accrued value" of his investment was $250,000 as of September 30, 2012, when it was not. |
| Thirteen | 11/12/12 | Defendant knowingly deposited and caused to be deposited for delivery by the Postal Service a check to R.G. in the amount of $10,000 for the mortgage payment on defendant's Sarasota residence from investor funds |
| Fourteen | 4/1/13 | Defendant knowingly deposited and caused to be deposited for delivery by the Postal Service a check in the amount of $1055.55 to K.C. for "first qtr. Interest from 1/14/13 through March 2013" |
| Fifteen | 5/1/13 | Defendant knowingly deposited and caused to be deposited for delivery by the Postal Service a check to R.G. in the amount of $10,000 for the mortgage payment on defendant's Sarasota residence from investor funds |
| Sixteen | 6/30/13 | Defendant knowingly caused Advanta Trust located in Largo, Florida to deposit for delivery by the Postal Service a statement to A.H. for A.H. IRA account ending in 3736 (Advanta Trust, as Trustee of account) reflecting a "net implied income" on the investment through June 30, 2013 of $19,719.15 for a total of $319,719.15 when it was not. |
| Seventeen | 7/1/13 | Defendant knowingly deposited and caused to be deposited for delivery by the Postal Service a check in the amount of $3125 to A.L.P. Trustee for "second quarter interest 2013" |
| Eighteen | 7/22/13 | Defendant knowingly deposited and caused to be deposited for delivery by the Postal Service a check in the amount of $289.531.28 to A.L.P. Trustee for "redemption" of investment |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE

1.      The allegations contained in Counts One through Eighteen of this

Indictment are hereby realleged and incorporated by reference for the purpose of

alleging forfeiture pursuant to the provisions of Title 18, United States Code,

Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section

2461(c).

2.      Upon his conviction of the violations alleged in Counts One through Eighteen of this Indictment, defendant GEATON DELLA PENNA shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all of his interest in any property, real or personal, which constitutes or is derived from proceeds traceable to the violations.

3.      The specific property to be forfeited includes, but is not limited to:

a.      A forfeiture money judgment of at least $3,019,610.00, representing the proceeds of the offenses;

b.      Approximately $607.87 seized from Bank of America Account Number 0036 7529 9777, in the name of The Contrarian Fund LLC;

c.      Approximately $9,989.57 seized from Apex Clearing Corporation Investment Account Number 5PD-72083-11, in the name of New Economy;

d.      Approximately $499.93 seized from Synovous Bank Account Number 100-526-449-2, in the name of Gaeton Capital Advisors LLC.;

e.      Approximately $19,178.93 seized from E-Trade Investment Account Number 6397-5405, in the name of The Contrarian Fund LLC.;

f.      Approximately $1,284.78 seized from Bank of America Bank (BOA) Account Number 2290 4546 1375, in the name of New Economy Fund LLC.;

g.      Approximately $1,530.74 seized from Synovous Bank Account Number 100-273-308-5, in the name of Gaeton Della Penna; and,

11

       h.     The real property located at 6629 Peacock Road, Sarasota, Florida 34242, titled under the name of Sharon Nizolek.

4.     If any of the property described above, as a result of any act or omission of the defendant:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court;

      c.  has been substantially diminished in value; or

      d.  has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by

Title 18, United States Code, Section 982(b), and Title 28, United States Code,

Section 2461(c).

A TRUE BILL,

Foreperson

A. LEE BENTLEY, III
United States Attorney

By: _____
Kelley C. Howard-Allen
Assistant United States Attorney

By: _____
Robert A. Mosakowski
Assistant United States Attorney
Chief, Economic Crimes Section

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Tampa Division

THE UNITED STATES OF AMERICA

vs.

### GAETON DELLA PENNA
a/k/a "Guy Della Penna"

## INDICTMENT

Violations:

Title 18 U.S.C., Sections 1341 and 1343

A true bill,

_Teresa D. Curry_
_____
Foreperson

Filed in open court this 20th day

of May 2014.

_____
Clerk

Bail    $_____

GPO 863 525

f_Indictment back.docx